**IN THE COURT OF APPEALS OF IOWA**

No. 21-1510
Filed March 2, 2022

**IN THE INTEREST OF M.O.,**
**Minor Child,**

**K.O., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Kyle Focht of Focht Law, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Amy Garreans, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her child, M.O., born in 2015. On appeal, she argues the State failed to establish a statutory ground authorizing termination, termination is not in M.O.'s best interest, we should apply a permissive exception to forgo termination, and she should be given additional time to work toward reunification.[1] We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether we should exercise any

---

[1] The mother also claims the Iowa Department of Human Services failed to make reasonable efforts towards reunification. However, she failed to alert the juvenile court prior to the termination hearing, so the issue is not preserved for our consideration. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with [the Iowa Department of Humans Services'] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal).

of the permissive exceptions to termination. *Id.* at 472–73. Then we address any additional claims raised by the parents. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

We first address the mother's challenge to the statutory grounds authorizing termination. The juvenile court found statutory grounds authorizing termination satisfied under Iowa Code section 232.116(1)(e), (f), and (*l*) (2021). "When the juvenile court finds multiple statutory grounds satisfied, we may affirm on any one ground." *In re K.M.*, No. 21-0660, 2021 WL 3074897, at *1 (Iowa Ct. App. July 27, 2021). We choose to address paragraph (f). Paragraph (f) authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). On appeal, the mother only challenges the fourth element, whether M.O. can be returned to her care. The fourth element is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

We conclude M.O. could not be returned to the mother's care at the time of the termination hearing. At the termination hearing, the mother conceded she was not ready to care for the child because she did not have a stable place to live or a

place for M.O. to reside.[2]  She is unemployed, and the longest she managed to stay employed during the life of this case was somewhere around one to three months.[3]  The mother's lack of stable housing and employment indicate she cannot provide M.O. with adequate care.  *See In re D.M.*, No. 18-0086, 2018 WL 1433104, at *2 (Iowa Ct. App. Mar. 21, 2018) (collecting cases finding a child cannot be returned to a parent when the parent does not have stable housing or employment); *In re K.S.*, No. 09-0291, 2009 WL 1067333, at *1 (Iowa Ct. App. Apr. 22, 2009) (concluding a child could not be returned to the mother's care in part because the mother was homeless and unemployed).  The mother also has unresolved substance-abuse issues.  She last sought intensive outpatient treatment in March of 2021 but was unsuccessfully discharged from that program.  A recent substance-abuse assessment recommended outpatient treatment, but the mother testified the evaluation just suggested therapy and she is on a waiting list.  She states she is sober.  But of the thirty-five drug tests offered, the mother missed twenty-four.  We presume these missed tests would have been positive for illicit substances.  *In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive).

Moreover, M.O. has unique medical needs that require a high level of care that the mother cannot meet.  M.O. has been diagnosed with Autistic disorder, mixed receptive-expression language disorder, and delayed milestone in childhood.  M.O. attends individual therapy weekly and is recommended to

---

[2] The mother lives in a one-bedroom apartment with three other adults.
[3] The mother testified the longest she had been employed was about a month at a hotel, but then she stated she worked for Walgreens for about three months in 2020.

participate in speech therapy one to two times a week and occupational therapy twice per week. Yet the mother has not attended any of M.O. medical or educational appointments since M.O. was removed from her home following a trial home placement. And the mother has not completed any programming designed to address M.O.'s behavioral and developmental goals. So she is left unequipped to handle the significant care M.O. requires.

We conclude M.O. cannot be safely returned to the mother's care, and a statutory ground for termination has been satisfied.

Our next step centers on M.O.'s best interest. *See* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Like the juvenile court, we conclude termination is in M.O.'s best interest. M.O.'s foster placement is willing to adopt him. *See* Iowa Code § 232.116(2)(b). And M.O. is making strides in their care. M.O. was non-verbal when placed in the foster home, but he has begun to speak limited words and is learning American Sign Language since being placed with the foster family. He does better at sleeping through the night than he did in the mother's care. The foster parents are also working on toilet training with M.O. They ensure M.O. gets to school consistently and his medical appointments regularly. In other words, the foster

parents are providing M.O. with the high level of care he requires, and he is reaping the benefits of their care. Termination of the mother's rights would allow for M.O. to be adopted by the foster parents. So we think termination is in M.O.'s best interest.

Next, we consider whether to apply a section 232.116(3) exception to termination. Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent. *See A.S.*, 906 N.W.2d at 476. The mother points to her close bond with M.O. as a reason to avoid termination. We assume she is attempting to invoke section 232.116(3)(c), which allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Certainly the mother and M.O. share a bond, but it is not so strong to warrant forgoing termination.

Finally, we address the mother's request for additional time to work toward reunification. The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). However, we do not anticipate the mother would be able to meaningfully address the barriers to reunification within six months' time.[4] Namely, we think she would still be unable

---

[4] We note the mother made some progress shortly before the termination hearing after she was assigned a new family centered services (FCS) worker. After her

to provide M.O. with the high level of care that he requires.  Moreover, M.O. needs permanency now.  So we do not grant the mother any additional time.

**AFFIRMED.**

---

relapse and removal following a trial home placement, the mother was out of contact with FCS workers.  And due to staffing changes, the mother's FCS worker did not reach out to her to facilitate visitation or help with other needs such as replacing her lost identification cards.  This is far from ideal.  FCS workers should attempt to engage with parents; the onus should not be placed solely on the parent's shoulders.  Here, once the current FCS worker contacted the mother, she started up visitation again and took steps toward replacing her identification cards so she could apply for housing programs and employment.  While the mother has made recent progress, we do not believe additional time would allow her to resume care of the child.